**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

CHECKERS INDUSTRIAL SAFETY PRODUCTS, LLC,

    Plaintiff,

v.

WIL ZUFELT,

    Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff Checkers Industrial Safety Products, LLC ("Checkers"), by and through its counsel, for its claims for relief against Defendant Wil Zufelt ("Zufelt"), alleges as follows:

## NATURE OF ACTION

1. For many years, Checkers, a manufacturer, marketer, and distributor of industrial safety products, has expended immeasurable time and resources developing its business model and strategies and targeting, developing, and maintaining relationships with its customer base. At all times, Checkers has taken great measures to protect and preserve the result of its labors i.e., its confidential business information and trade secrets, which are critical to its very vitality.

2. Despite Checkers' efforts to maintain and protect the confidentiality of its trade secrets, Zufelt has breached his obligations to keep confidential Checkers' trade secrets. Among other egregious conduct, Checkers recently learned Zufelt has become employed by AME, a

competitor of Checkers, and is using and disclosing Checkers' confidential trade secret information to take away Checkers' customers.

3. It is inevitable that, in his position with AME, Zufelt will continue to disclose and utilize Checkers' trade secrets.

4. Consequently, Checkers brings this action for misappropriation of its trade secrets and seeks an immediate order from this Court enjoining Zufelt from disclosing and/or utilizing Checkers' trade secrets.

## PARTIES

5. Plaintiff Checkers is a Colorado limited liability corporation with its principal place of business at 620 Compton Street, Broomfield, Colorado, 80020. Checkers is a global leader in the development of industrial safety products and has an over 25-year track record of providing highly effective safety solutions that save lives and protect assets.

6. Upon information and belief, Defendant Wil Zufelt is an individual residing in Ontario, Canada.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 1331 because this civil action arises under the laws of the United States.

8. This action arises and is brought under the Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Colorado Uniform Trade Secrets Act, C.R.S. §§ 7-74-101 to 110.

9. This Court has supplemental jurisdiction over the factually related state law claims in this dispute pursuant to 28 U.S.C. § 1367.

10. Defendant Zufelt is subject to personal jurisdiction in the District of Colorado because he was employed by Checkers which is located in the State of Colorado, and would frequently visit Checkers' corporate offices in the state to conduct business and receive training. In addition, Zufelt would frequently access Checkers' computer server in Colorado and, upon information and belief, misappropriated Checkers' trade secrets from that server.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) & (c) because Defendant is not a resident of the United States and therefore may be sued in any judicial district. Also, Defendant is subject to personal jurisdiction in this District, and/or a substantial part of the events giving rise to the claims in this action occurred within this District.

## GENERAL ALLEGATIONS

12. Checkers is in the business of manufacturing, marketing, and distributing industrial safety equipment to customers throughout the world and in many different industries.

13. Checkers has developed and maintained valuable relationships and goodwill with its customers. The markets within which Checkers sells its products are fiercely competitive, and Checkers' relationships and goodwill are of critical importance to Checkers in that many of Checkers' customers are repeat purchasers. Checkers bases its success and survival, in large part, on developing strong, long-lasting relationships with its customers and dealers.

14. Because Checkers' existing customers, leads, and relationships are of paramount significance to its long-term viability, Checkers takes great measures and expends extensive time and resources to strategically identify and target customers, develop and maintain key customer relationships and competitive strategies, and to serve its clientele through focused product improvement, proprietary pricing and warranty structures, and other confidential business

strategies. These targeted efforts enable Checkers to build long-term strategic relationships with customers and distributors, and are crucial to Checkers' long-term success.

15. Checkers maintains significant confidential and trade secret information related to these business practices and its customers and distributors.

16. Checkers' trade secret information is valuable because Checkers derives significant economic value from this confidential information. Checkers' customer and pricing information would give any competitor an unfair competitive advantage as it would allow competitors to specifically target and under-cut Checkers' pricing for key clients.

17. Accordingly, Checkers is highly sensitive to the confidential nature of its own information such as its sales, its customers/distributors, its pricing, and its business strategies and takes steps to protect and maintain that information as confidential.

18. Checkers protects its trade secrets and other confidential information by limiting access to certain information, requiring employees to keep confidential business and customer information, periodically reminding employees of their confidentiality obligations, password protecting documents, computers, and servers, having employees sign confidentiality and non-compete agreements and by having confidentiality provisions in Checkers' Employee Handbook.

19. In April 2012, Checkers hired Zufelt to be its East Canada Sales Representative. Through Zufelt's position with Checkers, he had access to, and had intimate knowledge and understanding of, Checkers' confidential and proprietary information, including Checkers' customer contacts, customer lists, sales leads, customer complaints, product pricing, competitive pricing strategies, warranty information, product changes, company policies, and competitive

strategies. This information was repeatedly described to, and in the presence of, Zufelt as proprietary and confidential.

20. Upon information and belief, Zufelt has misappropriated Checkers' trade secrets and confidential information and disclosed such information to others.

21. For example, on August 23, 2016, Zufelt sent an email to Wendy Capron at DXP Safety Division, a longtime customer of Checkers, offering her AME's line of wheel chocks and other mining accessories.

22. Attached to Zufelt's August 23, 2016, email was an excel spreadsheet titled Checkers Comparison that listed the Checkers Part Number and the price Checkers was charging DXP for that product and comparing it to the competing AME product and the price AME was offering that product to DXP for. The spreadsheet also contained a column that listed the percentage of saving DXP could achieve by choosing the AME product instead of the Checkers product.

23. Upon information and belief, Zufelt has sent similar emails to other customers of Checkers.

24. These actions constitute a serious threat to Checkers' business, and are in violation of applicable law.

25. If Zufelt continues to utilize his knowledge of Checkers' confidential information and trade secrets, Checkers will continue to suffer harm to its customer and dealer relationships that will be beyond any monetary repair. Further, Checkers' pricing could be irreparably eroded, and long-term customer and dealer relationships may be irreparably harmed such that Checkers will lose future business opportunities. Simply, Checkers has no adequate remedy at law to fully

protect itself, and if Zufelt's actions go unchecked, they will diminish the value of Checkers' trade secret and confidential information, diminish its goodwill, negatively impact customer relationships, and give AME a strategic advantage by enabling it to exploit the knowledge gained from Checkers' trade secrets to directly target Checker's key clients and undercut its pricing.

26.     Checkers brings this action to protect its trade secrets and confidential information and to seek redress from the harm that Zufelt's wrongful conduct has caused and will cause to Checkers, and to enjoin Zufelt from directly or indirectly disclosing or utilizing Checkers' confidential, proprietary and/or trade secret information.

## **FIRST CAUSE OF ACTION**
**(VIOLATION OF THE DEFEND TRADE SECRETS ACT 18 U.S.C. § 1836)**

27.     Checkers re-alleges and incorporates all matters contained in the preceding paragraphs as though fully set forth herein.

28.     Checkers is the owner of certain trade secrets relating to, among other things, Checkers' competitive strategies, product pricing, customer contacts, customer lists, sales leads, competitive pricing strategies, warranty information, as well as other confidential and proprietary information.

29.     This information falls within the definition of a trade secret as set forth in the Defend Trade Secrets Act, 18 U.S.C. § 1839(3), and relates to Checkers products and services that are used in interstate and foreign commerce.

30.     The information contained in Checkers' above-listed trade secrets, as well as Checkers' other confidential information, is the subject of reasonable efforts by Checkers to maintain the information as confidential including limiting access to certain information, requiring employees to keep confidential business and customer information, periodically

reminding employees of their confidentiality obligations, password protecting documents, computers, and servers, having employees sign confidentiality and non-compete agreements, and having confidentiality provisions in Checkers' Employee Handbook.

31. Checkers derives economic value from its above-listed trade secrets, as well as its other confidential information because the information is not generally known or readily ascertainably by proper means.

32. Through his position at Checkers, Zufelt had access to Checkers' confidential and trade secret information.

33. Upon information and belief, prior to Zufelt's departure from Checkers, he took materials and files from Checkers, including refusing to turn in his cell phone, without authorization. These files contained Checkers' trade secrets, and Zufelt's conduct constitutes an actual and continuing misappropriation of Checkers' trade secrets.

34. Zufelt's taking of materials and retention of his company cell phone was in violation of company policy and constituted the acquisition of Checkers' trade secrets by improper means.

35. Zufelt's misappropriation of Checkers' trade secrets involved a willful and wanton disregard for Checkers' rights.

36. Upon information and belief, Zufelt has disclosed Checkers' trade secrets to others, including without limitation, DXP and AME, without the express or implied consent of Checkers, for the purpose of exploiting Checkers' trade secrets for his own interests, without compensation to Checkers.

37. Zufelt's willful and threatened misappropriation of Checkers' trade secrets has caused Checkers actual and consequential damages and will continue to cause Checkers damages and irreparable injury unless Zufelt is enjoined by the Court. Checkers has no adequate remedy at law.

38. Zufelt's misappropriation of Checkers' trade secrets is attended by circumstances of fraud, malice, or willful and wanton conduct, warranting an award of punitive and exemplary damages.

39. Checkers was harmed by Zufelt's actions, for which it is entitled to damages, injunctive relief, and exemplary damages as provided for by 18 U.S.C § 1836(b)(3).

## SECOND CAUSE OF ACTION
### (VIOLATION OF THE COLORADO UNIFORM TRADE SECRETS ACT, C.R.S. §§ 7-74-101 TO 110)

40. Checkers re-alleges and incorporates all matters contained in the preceding paragraphs as though fully set forth herein.

41. Checkers is the owner of certain trade secrets relating to, among other things, Checkers' competitive strategies, product pricing, customer contacts, customer lists, sales leads, competitive pricing strategies, warranty information, as well as other confidential and proprietary information.

42. The information contained in Checkers' above-listed trade secrets, as well as Checkers' other confidential information, is the subject of reasonable efforts by Checkers to maintain the information as confidential including limiting access to certain information, requiring employees to keep confidential business and customer information, periodically reminding employees of their confidentiality obligations, password protecting documents,

computers, and servers, having employees sign confidentiality and non-compete agreements, and having confidentiality provisions in Checkers' Employee Handbook.

43. Checkers derives economic value from its above-listed trade secrets, as well as its other confidential information because the information is not generally known or readily ascertainably by proper means.

44. Through his position at Checkers, Zufelt had access to Checkers' confidential and trade secret information.

45. Upon information and belief, prior to Zufelt's departure from Checkers, he took materials and files from Checkers, including refusing to turn in his cell phone, without authorization. These materials contained Checkers' trade secrets, and Zufelt's conduct constitutes an actual and continuing misappropriation of Checkers' trade secrets.

46. Zufelt's taking of materials and retention of his company cell phone was in violation of company policy and constituted the acquisition of Checkers' trade secrets by improper means.

47. Zufelt's misappropriation of Checkers' trade secrets involved a willful and wanton disregard for Checkers' rights.

48. Upon information and belief, Zufelt has disclosed Checkers' trade secrets to others, including without limitation, DXP and AME, without the express or implied consent of Checkers, for the purpose of exploiting Checkers' trade secrets for his own interests, without compensation to Checkers.

49. Zufelt's willful and threatened misappropriation of Checkers' trade secrets has caused Checkers actual and consequential damages and will continue to cause Checkers damages

and irreparable injury unless Zufelt is enjoined by the Court. Checkers has no adequate remedy at law.

50. Zufelt's misappropriation of Checkers' trade secrets is attended by circumstances of fraud, malice, or willful and wanton conduct, warranting an award of punitive and exemplary damages.

51. Checkers was harmed by Zufelt's actions, for which it is entitled to damages and other relief including:

      A. injunctive relief pursuant to C.R.S. § 7-74-103;

      B. exemplary damages pursuant to C.R.S. § 7-74-104(2); and,

      C. attorney fees pursuant to C.R.S. § 7-74-105.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For temporary and preliminary injunctive relief enjoining and restraining Zufelt such that he is required to:

    a) cease and desist from misappropriating, disclosing, disseminating, and/or using Checkers' trade secrets and confidential and proprietary information;

    b) cease and desist from contacting, communicating with, or soliciting Checkers' customers either directly or indirectly in any way or form;

    c) cease and desist from doing any work at AME that utilizes or threatens to utilize, either directly or indirectly, any knowledge of Checkers' confidential information or trade secrets;

    d) cease and desist from any communications, correspondence, and/or disclosures, either directly or indirectly, via any method or form, with any AME employees or executives regarding any knowledge of Checkers' confidential information or trade secrets, including Checker' customers,

        sales leads, product pricing, competitive pricing, product design, warranty information, customer complaints, product changes, manufacturing processes, company policies, and competitive strategies; and

    e)     destroy all hard copies of Checkers' confidential and trade secret information and purge all copies of all confidential information from personal computers, PDAs, and/or smart phones, and include verifications under oath both personally and by a third-party computer forensics expert that the same has been accomplished.

2.     For damages, including exemplary damages, costs, attorney fees and expenses, and injunctive relief as authorized by the Defend Trade Secrets, Act 18 U.S.C § 1836, the Colorado Uniform Trade Secrets Act, C.R.S. §§ 7-74-101 to 110, and/or the inherent powers of the Court;

3.     For Prejudgment and Post-judgment interest against Defendant on all sums allowed by law; and

4.     For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury of all issues triable to a jury.

RESPECTFULLY SUBMITTED this 23rd day of September, 2016.

        HOLLAND & HART LLP

        */s/ Brett Foster*
        Brett Foster
        Stephen M. Sansom
        222 South Main Street, Suite 2200
        Salt Lake City, UT 84101
        Telephone:  801-799-5800

        HOLLAND & HART LLP

        */s/Adam Hubbard*
        1800 Broadway, Suite 300
        Boulder, CO  80302
        Telephone:  303-473-2700

        *Attorneys for Plaintiff*

9110481_3